UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALEXANDRU PLACINTA,
ARTEM STRELCHUK, *individually and*
*on behalf of all other persons*
*similarly situated*

          Plaintiffs,

      -against-

GRAZINA PILKA, INC.,
    d/b/a Tatiana Restaurant
3152 RESTAURANT, INC.,
BRIGHTON SEA BREEZE REST. INC.,
ON THE BOARDWALK CAFE, INC.,
BRIGHTON SEA BREEZE CAFE, INC.,
GRAZINA 888, INC.,
    d/b/a Tatiana Grill Cafe,
TATIANA VARZAR,
MICHAEL VARZAR,
KARINA ITSKOVICH,
GRAZINA PILKAITIENE,

          Defendants.
-------------------------------------------------------------------X

**MEMORANDUM AND
ORDER**
16-CV-4272-KAM-SJB

**BULSARA, United States Magistrate Judge:**

    Plaintiffs Alexandru Placinta ("Placinta") and Artem Strelchuk ("Strelchuk")

(collectively "Plaintiffs") commenced this wage and hour litigation against ten

Defendants: six entities—Grazina Pilka, Inc. ("Tatiana Restaurant"); 3152 Restaurant,

Inc.; Brighton Sea Breeze Rest. Inc.; On the Boardwalk Cafe, Inc.; Brighton Sea Breeze

Cafe, Inc.; Grazina 888, Inc. ("Tatiana Grill"); and four individuals—Tatiana Varzar,

Michael Varzar, Karina Itskovich, and Grazina Pilkaitiene based on alleged violations of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and New York Labor Law

("NYLL").  Each of the entity defendants are legally related to three restaurants: Tatiana

Restaurant, Beach Cafe, and Tatiana Grill.[1]  Placinta and Strelchuk are former

employees at these restaurants.

Plaintiffs have moved for conditional certification of a collective action for:

All current and former servers, bussers, captains, food runners, bartenders, and all other employees who regularly and customarily receive tips, employed at Tatiana Restaurant, Beach Cafe, and Tatiana Grill Cafe from August 1, 2013 through the present.

(Memorandum of Law in Support of Plaintiffs' Motion for Conditional

Certification, Dkt. No. 67 ("Mot.") at 2).  The Honorable Kiyo A. Matsumoto

referred the motion to the undersigned for decision.[2]  For the reasons stated

below, the motion is granted in part.

## Standards for Motion for Collective Certification

FLSA was enacted to eliminate "labor conditions detrimental to the maintenance

of the minimum standard of living necessary for health, efficiency, and general well-

being of workers."  29 U.S.C. § 202(a).  The statute requires employers to pay employees

a minimum hourly wage, *id.* § 206, and an overtime rate of "not less than one and one-

half times the regular rate at which [they are] employed," *id.* § 207.  Section 216(b) of

---

[1] The initial complaint also included two other entities: FL Tatiana Club-Restaurant, Inc. and Tatiana Restaurant and Night Club.  Both are Florida corporations purportedly owned by the individual Defendants.  (Compl. ¶¶ 25-26).  FL Tatiana Club-Restaurant, Inc. was not named in the Amended Complaint.  (Am. Compl., Dkt. No. 41).  1710 Rest. Inc. was named as a defendant in the Amended Complaint (Am. Compl. ¶ 31), but was dismissed from the case on September 29, 2017.  (Order granting Stipulation of Dismissal, Dkt. No. 64).

[2] Federal law permits "a magistrate judge to hear and determine any pretrial matter pending before the court," 28 U.S.C. § 636(b)(1)(A), including a motion for conditional certification of a collective action which is only a "preliminary determination" and not dispositive.  *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005); *see also Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010) (collecting cases).

FLSA provides a private right of action to an employee to recover unpaid minimum wages or overtime compensation from an employer who violates the Act's provisions. The same section permits plaintiffs to have their case certified as a collective action on behalf of "themselves and other employees similarly situated."  29 U.S.C. § 216(b). Unlike Rule 23 class actions, a collective action is "opt-in," meaning to join the suit a person must "give[] his consent in writing to become such a party" and file that consent in the "court in which such action is brought."  29 U.S.C. § 216(b).

A two-stage inquiry determines whether a motion to certify a FLSA collective action should be granted.  *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Summa*, 715 F. Supp. 2d at 384.  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs *do in fact exist*."  *Id.* (additional emphasis added).

"In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required.  This first stage determination is based on the pleadings, affidavits and declarations."  *Bifulco*, 262 F.R.D. at 212 (internal quotations and citations omitted); *Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings,

3

affidavits, [and] declarations, or the affidavits and declarations of other potential class members.").  That being said, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made."  *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (quotations omitted).  Ultimately, however, although the inquiry "cannot be satisfied simply by 'unsupported assertions,' . . . it should remain a low standard of proof."  *Myers*, 624 F.3d at 555 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)).  Consistent with this low standard of proof, "'[a]t [this] initial assessment stage, . . . the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.'"  *Summa*, 715 F. Supp. 2d at 385 (quoting *Francis v. A & E Stores, Inc.,* No. 06-CIV-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008)).[3]

"Because the standard at the first stage is fairly lenient, courts applying it typically grant conditional certification."  *Amador v. Morgan Stanley & Co.*, No. 11-CIV-4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (quotations and alterations omitted).  Should the plaintiff make the requisite initial showing, he is entitled to conditional certification of a collective action, and a court may "authorize an FLSA plaintiff to provide written notice to potential plaintiffs of their right to join in the action."  *Gortat v. Capala Bros.*, No. 07-CV-3629, 2009 WL 3347091, at *8 (E.D.N.Y.

---

[3] The modest factual showing is "considerably less stringent than the requirements for class certification under Rule 23."  *Poplawski v. Metroplex on the Atl., LLC*, No. 11-CV-3765, 2012 WL 1107711, at *3 (E.D.N.Y. Apr. 2, 2012) (citation and quotations omitted).  That is, "a named plaintiff in a collective action need not demonstrate other facts—numerosity, commonality, typicality, and adequacy of representation—which are required to bring a class action" under Rule 23.  *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *4 (E.D.N.Y. June 16, 2009) (quotations omitted).

Oct. 16, 2009), *aff'd*, 568 F. App'x. 78 (2d Cir. 2014); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 402 (S.D.N.Y. 2012) ("If the plaintiffs demonstrate that 'similarly situated' employees exist, the [c]ourt should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process.") (citation and quotations omitted).

It is following the distribution of the notice, the completion of any opt-in period, and any additional discovery, that the Court undertakes the second stage of the two-part Section 216(b) inquiry. "[A]t the second stage, the district court will, on a fuller record determine . . . whether the plaintiffs who have opted in *are in fact* 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555 (emphasis added) (quotations omitted). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

<u>Factual Background and Procedural History</u>

Unless otherwise noted, these facts are drawn from the depositions, declarations, exhibits, and other evidence submitted.

Tatiana Varzar owned and operated both Tatiana Restaurant and Tatiana Grill. (Declaration of Tatiana Varzar, attached to Memorandum of Law in Opposition to Plaintiff's Motion for Conditional Certification, ("Resp."), Dkt. No. 68 ("Tatiana Varzar Decl.") ¶ 3). Tatiana Restaurant was owned and operated through 3152 Restaurant Inc., (*id.* ¶ 5), and Tatiana Grill was owned and operated through Brighton Sea Breeze Cafe Inc., (*id.* ¶ 4).[4] Tatiana Varzar's husband Michael Varzar owns and operates Beach Cafe.

---

[4] Defendant On the Boardwalk Café is a predecessor establishment to Tatiana Grill.

(Am. Compl. ¶ 4; Deposition of Michael Varzar, attached as Ex. 4 to Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Conditional Certification ("Reply"), Dkt. No. 69 ("Michael Varzar Dep.") at 14:2-3; 23:17-25:20 (testifying that he owned Beach Cafe and Tatiana Varzar owned Tatiana Restaurant and Tatiana Grill)).

Around 2010 or 2011, Tatiana Grill was transferred to individual Defendant Karina Itskovich, the daughter of Tatiana and Michael Varzar.  (Deposition of Tatiana Varzar, attached as Ex. 6 to Reply, Dkt. No. 69 ("Tatiana Varzar Dep.") at 47:14-48:7). Tatiana Restaurant and Tatiana Grill were sold to Grazina Pilka, Inc. and Grazina 888, Inc. respectively in 2015.  (Tatiana Varzar Decl. ¶ 23).  Both Grazina Pilka, Inc. and Grazina 888, Inc. are owned by individual Defendant Grazina Pilkatiene.  (*Id.* ¶ 28; Deposition of Grazina Pilkaitiene, attached as Ex. 5 to Reply ("Pilkaitiene Dep.") at 29:23-30:23 (testifying she purchased Tatiana Restaurant and Tatiana Grill in May 2015)).

Tatiana Restaurant and Tatiana Grill are stand-alone restaurants.  (Tatiana Varzar Decl. ¶ 3).  Tatiana Restaurant, open since 1998 is located at 3152 Brighton 6th Street in Brooklyn, while Tatiana Grill is located at 3145 Brighton 4th Street.  (Affidavit of Israel Kvetnoy, attached to Resp., Dkt. No. 68 ("Kvetnoy Aff.") at ¶¶ 3-4; Tatiana Varzar Decl. ¶ 5).

Tatiana Restaurant serves "international cuisine," (Michael Varzar Dep. at 74:15-20) in an indoor formal dining room and outdoors as the season permits.  (Kvetnoy Aff. ¶¶ 5-6).  Employee lists submitted by Defendants indicate that Tatiana Restaurant employed, from 2011 to June 2015, 16 wait staff, 11 kitchen staff, and two bartenders. (Employee Lists, attached as Ex. C to Resp. Declaration of Daniel C. Marotta ("Marotta

Decl."), Dkt. No. 68 ("Employee Lists") at 1).  From June 2015 to the present, the Restaurant employed 14 wait staff, seven kitchen staff, and two bartenders.  (*Id.* at 2).  This is consistent with other evidence Defendants offered including that "Tatiana Restaurant has employed approximately 25-35 employees . . . during the off season and approximately 40-45 employees at the highest point of the season (May-September)." (Declaration of Olena Guzhvenko, attached to Resp., Dkt. No. 68 ("Guzhvenko Decl.") ¶ 11).

Tatiana Grill is primarily a casual outdoor cafe; it operates seasonally and it has a few indoor seats.  (Kvetnoy Aff. ¶ 7).  Defendants' employee lists—provided only for 2012 and 2013—indicate that Tatiana Grill had 19 wait staff, three kitchen staff, and two bartenders.  (Employee Lists at 3; Guzhvenko Decl. ¶ 36 (stating that Tatiana Grill has 10-15 employees year-round)).

The Beach Cafe shares an address with Tatiana Restaurant and food and staff are brought from Tatiana Restaurant.  (Tatiana Varzar Dep. at 56:10-25 (A: "Beyond that is the Beach Cafe."  Q: "Okay.  Got it.  But they both share the same address?"  A: "Yes."); Michael Varzar Dep. at 59:9-12 (Q: "So the Beach Cafe, which is opened on weekends, uses the Tatiana's Restaurant kitchen to prepare and serve food, correct?"  A: "Yes."); Guzhvenko Decl. ¶ 50).  It was physically located some feet away from Tatiana Restaurant, (Michael Varzar Dep. at 58:11-16), and operates along the boardwalk in Brighton Beach during the summer months.  (*Id.* at 65:25-66:6).  The Beach Cafe pays Tatiana Restaurant for food and use of its kitchen.  (*Id.* at 60:22-61:8).  It also "used some of the wait staff from Tatiana Restaurant," which billed the Beach Cafe for the services.  (Tatiana Varzar Decl. ¶ 32; Guzhvenko Decl. ¶ 49).  The space is now rented during the day to an adult day care center, (Michael Varzar Dep. at 62:8-12), and

occasionally used as a catering space for parties.  (*Id.* at 62:8-12; Deposition of Olena Guzhvenko dated June 19, 2017, attached as Ex. C-2 to Mot., Dkt. No. 67 ("June 19 Guzhvenko Dep.") at 67:22-25).

Placinta worked as a server at Tatiana Restaurant and the Beach Cafe from approximately April 2011 through November 2015.  (Am. Compl. ¶ 55; Declaration of Alexandru Placinta, attached as Ex. D to Mot., Dkt. No. 67 ("Placinta Decl.") ¶ 2; Deposition of Alexandru Placinta, attached as Ex. F to Mot., Dkt. No. 67, ("Placinta Dep.") at 10:22-11:5, 15:19-20).  Placinta typically worked as a server five to six days a week from April 2011 to October 2013, and three to four days a week from October 2013 to November 2015.  (Am. Compl. ¶ 58; Placinta Decl. ¶ 4).  Placinta generally worked approximately 14 or more hours a day, and more than 40 hours each week.  (Placinta Decl. ¶¶ 2, 8).

Strelchuk worked as a server at Tatiana Grill from approximately April 2012 through October 2012 and again from April 2013 through October 2013.  (Am. Compl. ¶ 60; Declaration of Artem Strelchuk, attached as Ex. E to Mot., Dkt. No. 67 ("Strelchuk Decl.") ¶ 1; Deposition of Artem Strelchuk, attached as Ex. G to Mot., Dkt. No. 7 ("Strelchuk Dep.") at 7:11-20, 26:23-27:19).  Strelchuk typically worked as a server approximately 14 to 16 hours a day, 5 to 6 days a week, or more than 40 hours each week.  (Am. Compl. ¶ 61; Strelchuk Decl. ¶ 2 (stating that he worked 12 to 14 hours per day, 5 days per week)).  Defendants contend that Strelchuk was never employed at any of the three restaurants, (Tatiana Varzar Decl. ¶ 16; Guzhvenko Decl. ¶ 45), but instead worked as a temporary summer busboy at the Tatiana Grill in either 2012 or 2013. (Kvetnoy Aff. ¶ 12; Guzhvenko Decl. ¶¶ 46-47).  Defendants' bookkeeper stated that

Strelchuk did not appear on the Aldelo system for Tatiana Grill, (Guzhvenko Decl. ¶ 32), and they have no records that identify him as a Grill employee.  (*Id.* ¶ 45).

In addition, both Plaintiffs were also required once a week to participate in a "Sanitation Day" at the restaurants.  (Am. Compl. ¶ 63).  During Sanitation Day, "servers and bussers were required to perform non-tipped work, such as cleaning walls and tables, cleaning silverware, washing and cleaning plates and glasses, sweeping and mopping floors, setting up tables and chairs, folding napkins, cleaning the basement, cleaning aquariums, performing maintenance, delivering items to storage, buying supplies, taking out garbage, and hanging decorations for holiday parties." (Placinta Decl. ¶ 10; *see also* Strelchuk Dep. at 34:6-10; Strelchuk Decl. ¶ 11; Declaration of Olena Vyshnevska, attached as Ex. 1 to Reply, Dkt. No. 69 ("Vyshnevska Decl.") ¶ 15; Michael Varzar Dep. at 97:3-22 (confirming that waitstaff performed "Sanitation Day" duties prior to 2010)).

Plaintiffs performed this non-tipped work for a minimum of 2 to 4 hours every week without being paid any wages.  (Am. Compl. ¶ 64; Placinta Decl. ¶ 11; Strelchuk Decl. ¶ 11; Vyshnevska Decl. ¶ 11).  Plaintiffs also performed other non-tipped work for 2 to 4 hours of each shift they worked without receiving any compensation.  (Am. Compl. ¶ 65; Placinta Decl. ¶ 10; Strelchuk Dep. at 34:15-36:13; Strelchuk Decl. ¶ 10; Vyshnevska Decl. ¶ 10).

Plaintiffs allege that during their employment, they were not paid any hourly wages or overtime for the hours worked.  (Am. Compl. ¶¶ 59, 62; Placinta Dep. at 14:11-22; Placinta Decl. ¶ 5; Strelchuk Dep. at 23:8-21; Strelchuk Decl. ¶ 3).  Instead, Plaintiffs were compensated only with tips they received from customers and the portion Defendants permitted them to keep.  (Am. Compl. ¶¶ 59, 62; Placinta Dep. at 14:11-22;

Placinta Decl. ¶ 5; Strelchuk Decl. ¶ 3).  Plaintiffs were required to pay $5-$10 of their tips to security staff at the restaurants and $6 to kitchen workers.  (Am. Compl. ¶¶ 66-67; Placinta Dep. at 52:25-53:5; Strelchuk Dep. at 33:10-24).

Defendants offer a contrary account in their testimony and declarations.  For example, while Placinta is listed on Defendants' employee lists for Tatiana Restaurant under wait staff, (Employee Lists at 1-2), and Defendants claim that he was the "head waiter" at the restaurant, they state that he was paid both from tips and regular pay (and received "special compensation" for closing the restaurant down each week).  (Tatiana Varzar Decl. ¶ 13; Guzhvenko Decl. ¶ 8 ("Placinta was paid as follows: a regular wage by check; special additional cash compensation of $300 per week for certain managerial duties; plus he kept his tips for working as a waiter on weekends."); ¶ 19 ("It is not true that all employees were paid tips or only tips.")).  The restaurant's bookkeeper attested that "Tatiana Restaurant charges a surcharge of 10% to all customers, which is *in addition* to gratuities or tips.  Waiters keep 7% of the 10% surcharge.  Placinta also received the 7%."  (Guzhvenko Decl. ¶ 10) (emphasis added).  As evidence that Placinta was paid via check and not just tips, Defendants submitted copies of Placinta's 2012 W2 forms, (W2 Forms, attached as Ex. A to Resp., Dkt. No. 68) and 2015 salary or payroll checks, (Bank Statement Checks, attached as Ex. B to Resp., Dkt. No. 68; Payroll Summaries, attached as Ex. D to Resp., Dkt. No. 68).  (*Id.* ¶ 21).  They provided similar checks for other employees.  (Bank Statements, attached as Ex. I to Resp., Dkt. No. 68; Brighton Seabreeze Cafe Earnings Report, attached as Ex. J to Resp., Dkt. No. 68; Tatiana Payroll Spreadsheet, attached as Ex. K to Resp., Dkt. No. 68; *see also* Guzhvenko Decl. ¶ 23).  Placinta acknowledged the existence of the 10%/7% surcharge

and split, but testified that was his only compensation, and he received no additional wages.  (Placinta Dep. at 23:14-25).

Olena G. Vyshnevska ("Vyshnevska") worked as a server at Tatiana Grill with Strelchuk during the time periods Strelchuk alleges he worked there (namely in both 2012 and 2013).  (Vyshnevska Decl. ¶¶ 2-3).  Vyshnevska's declaration corroborates Plaintiffs' claims that servers "were not paid any wages" and their "compensation was based solely on the tips . . . received from customers," but "were required to pay a portion of . . . earned tips per day to the security and to the kitchen staff who peeled potatoes and/or cleaned and prepared oysters."  (Vyshnevska Decl. ¶¶ 5, 16).

Plaintiffs further allege that other waiters, bus persons, captains, food runners, bartenders and all other employees who regularly and customarily receive tips were subject to the same employment policies.  (Am. Compl. ¶ 48).  That is, they were not paid any hourly wage or overtime compensation or pay for any non-tipped work performed, and were only permitted to keep a portion of their earned tips.  (Am. Compl. ¶¶ 68-71).

Defendants for their part deny the existence of a uniform salary practice.  (*E.g.*, Guzhvenko Decl. ¶¶ 6, 15).  For instance, they allege that there are different classes of employees—wait staff, bartenders, and kitchen staff—in the three locations; that each class of employee has a different schedule, pay rate, hours, and duties from each other; and that the employees differ even within the same location (with some assigned exclusively to the outside service and others indoors).  (Tatiana Varzar Decl. ¶¶ 7-12; Guzhvenko Decl. ¶¶ 15-18).  They contend that no employee was permitted, pursuant to a "long standing policy," to work overtime.  (Tatiana Varzar Decl. ¶ 15).

Plaintiffs filed the Complaint on August 1, 2016.  (Compl., Dkt. No. 1).  Plaintiffs filed an Amended Complaint on April 10, 2017.  (Am. Compl., Dkt. No. 41).  The Amended Complaint alleges 12 causes of action: 1) violation of the minimum wage provisions of FLSA (29 U.S.C. § 206) (Am. Compl. ¶¶ 140-146); 2) violation of the overtime provisions of FLSA for work in excess of 40 hours per week (29 U.S.C. § 207) (Am. Compl. ¶¶ 147-151); 3) failure to pay wages (NYLL § 198) (Am. Compl. ¶¶ 152-165); 4) violation of the New York Minimum Wage law (12 NYCRR § 146; NYLL § 663) (Am. Compl. ¶¶ 166-179); 5) violation of the overtime provisions of NYLL (12 NYCRR § 146; NYLL § 663) (Am. Compl. ¶¶ 180-187); 6) violation of the Spread of Hours Wage Order for any day they had to work over 10 hours a day (12 NYCRR § 146-1.6) (Am. Compl. ¶¶ 188-192); 7) improper retention of gratuities (NYLL § 196-d) (Am. Compl. ¶¶ 193-198); 8) failure to provide wage notices (NYLL §§ 195(1), 198-1(b)) (Am. Compl. ¶¶ 199-204); 9) failure to provide wage statements (NYLL §§ 198-1(d), 195(3); 12 NYCRR §§ 146-2.2, 2.3) (Am. Compl. ¶¶ 205-209); 10) successor liability on the grounds that Grazina and Breeze Restaurant are successors of 3152 Restaurant and were doing business as Tatiana Restaurant (Am. Compl. ¶¶ 210-213); 11) successor liability on the grounds that Grazina 888 and Breeze Cafe are successors of Boardwalk Cafe and were doing business as Tatiana Cafe (Am. Compl. ¶¶ 214-217); and 12) joint liability among all Defendants because they operate a single integrated enterprise and are a joint employer (Am. Compl. ¶¶ 218-224).

On January 19, 2018, Plaintiffs filed a motion for conditional certification of an FLSA collective action.  Plaintiffs seek to send notice to "[a]ll current and former servers, bussers, captains, food runners, bartenders, and all other employees who

regularly and customarily receive tips, employed at Tatiana Restaurant, Beach Cafe, and Tatiana Grill Cafe from August 1, 2013 through the present."  (Mot. at 2).

Discussion

I.    <u>Conditional Certification of Collective Action</u>

Plaintiffs seek conditional certification of a collective action and authorized notice for:

> All current and former servers, bussers, captains, food runners, bartenders, and all other employees who regularly and customarily receive tips, employed at Tatiana Restaurant, Beach Cafe, and Tatiana Grill Cafe from August 1, 2013 through the present.

*Id.*  Plaintiffs must demonstrate that they are similarly situated to the potential opt-in plaintiffs—all the employees of the two Tatiana restaurants and the Beach Cafe for the three years prior to the filing of the initial complaint—and such individuals were subject to the same "unlawful policy."  They allege that they were deprived of minimum wages, overtime wages, and the attendant benefits under New York law—including spread of hours compensation.  (Am. Compl. ¶¶ 14-15).  They also make claims under FLSA.  At this stage it is only necessary to consider whether the alleged policies violate federal law.  "Collective actions under the FLSA encompass only FLSA violations."  *Feng v. Soy Sauce LLC*, No. 15-CV-3058, 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016) (citing *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011)); *Myers*, 624 F.3d at 555 ("The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to *whether a FLSA violation has occurred*.") (emphasis added); *Zeledon v. Dimi Gyro LLC*, No. 15-CV-7301, 2016 WL 6561404, at *6 (S.D.N.Y. Oct. 13, 2016) ("[A] plaintiff must at least make a facially

13

adequate showing that putative members of the collective are similarly situated with respect to the FLSA violations the named plaintiff alleges. . . .") (alterations and quotations omitted).[5]

FLSA requires that employees be paid at least a minimum hourly rate. 29 U.S.C. § 206(a)(1). FLSA allows employers to pay tipped restaurant employees a cash wage less than the statutory minimum if the employees receive gratuities sufficient to compensate for the difference. *Id*. § 203(m).

Plaintiffs have established through their declarations and other evidence that they were subject to a policy that runs afoul of FLSA: the practice of only paying employees in tips, not in regular hourly wages, that did not total the required hourly minimum wages. Both Placinta and Strelchuk attest that they were subject to this practice. (Placinta Decl. ¶ 5; Strelchuk Decl. ¶ 3; *see supra* at 9).

Defendants vehemently dispute Plaintiffs' allegations. They contend—by citing to the deposition and declaration of their bookkeeper, Guzhvenko, and appending checks and other documents—that Placinta was paid both via tips and regular wages, and also received regular "special compensation" for closing down Tatiana Restaurant each week. *Supra* at 10. Defendants rely on the fact that Placinta was paid via check as evidence that he was paid a salary and not just tips, (Resp. at 4); Placinta disputes this, and claims that the checks reflected his tip compensation, not salary, (Placinta Dep. at 50:2-4). With respect to Strelchuk, they have come forward with evidence that he never worked as an employee for Tatiana Grill, and was only, at best, a temporary worker for a

---

[5] "To bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23." *Feng*, 2016 WL 1070813, at *4.

single season in 2012. *Supra* at 8. Even if Defendants' version of the facts is ultimately correct, at this stage of the case these arguments are inapposite. That is, they go to the ultimate merits of the claims—something to be resolved either at summary judgment, or in stage two of the collective certification inquiry—and are not pertinent to the conditional certification analysis. "[A] court does not weigh the merits of a plaintiff's underlying claims, resolve factual disputes, or evaluate credibility at this stage." *Moriera v. Sherwood Landscaping Inc.*, No. 13-CV-2640, 2014 WL 12539653, at *4 (E.D.N.Y. Mar. 31, 2014); *e.g.*, *Stevens v. HMSHost Corp.*, No. 10-CIV-3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (defendant's submission of declarations of current employees "cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery.") (quotations omitted); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-CIV-7557, 2011 WL 2207517, at *5 (S.D.N.Y. June 6, 2011) ("[D]efendants also argue that employees identified by the plaintiffs as managers were in fact maidtre d's who were entitled to tips and gratuities, and therefore the defendants did not retain any of the tips and gratuities and were entitled to the tip credit. This is a factual issue that reaches the merits of the plaintiffs' claims and is therefore inappropriate at this stage of the proceeding.").

Placinta and Strelchuk's testimony and statements alone warrant conditional certification of a collective action. At the conditional certification stage "the burden is so low that even one or two affidavits establishing the common plan may suffice." *Kim v. 511 E. 5th St.*, LLC, 985 F. Supp. 2d 439, 445-46 (S.D.N.Y. 2013); *see also Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) ("[C]ourts regularly grant conditional certification of collective actions based on employee

affidavits setting forth an employer's failure to pay minimum wage or overtime and identifying similarly situated employees by name."); *Colon v. Major Perry St. Corp.*, No. 12-CIV-3788, 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA.") (collecting cases); *Mata v. Foodbridge LLC*, No. 14-CIV-8754, 2015 WL 3457293 (S.D.N.Y. June 1, 2015) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.") (quotations omitted).  Not only have Placinta and Strelchuk come forward with declarations, but each gave deposition testimony that corroborated their accounts.  Their evidence is also corroborated by a third employee—Vyshnevska, a server at Tatiana Grill.  (Vyshnevska Decl. ¶ 5 ("I was not paid *any* wages when I worked at Tatiana Grill Cafe.  I am aware that most of the other servers and bussers that I worked with were not paid any wages as well.  Our compensation was based solely on the tips we received from customers."); ¶ 9 ("I was never paid anything by Tatiana Grill Cafe.  I kept the cash portion of my tips.  I never received a check from Tatiana Grill Cafe and I have never seen any other server or busser receive a check from Tatiana Grill Cafe.")).

Defendants' bookkeeper also provided deposition testimony that corroborates Plaintiffs' accounts.  She was asked: "Since the time you started in 2014, and then later in 2015 at the Tatiana Restaurant, was there a time when the servers were only paid based on the tips they earned and not an hourly wage?" to which she answered "Yes." (June 19 Guzhvenko Dep. at 88:25-89:5; *see also id.* at 85:34-86:22 (noting there is no document keeping track of hours worked by servers at Tatiana Grill); 87:24-88:4; 91:18-

16

92:6 (Q: "Well, we know that the wait staff was not being paid an hourly wage, right?"
A: "Correct."  Q: "We can agree on that?"  A: "Correct."  Q: "Which means that the only
wage they earned would be their tips, correct?" . . . A: "There is also a service charge.");
92:10-15 (confirming that waiters were not paid outside of tips or the service charge
even if it was a slow day)).[6]  And for work at the Beach Cafe, servers were paid a flat, not
an hourly, rate.  (*Id.* at 96:16-18).

    This evidence is more than sufficient to warrant conditional certification of a
collective.  *See, e.g.*, *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 548-49
(S.D.N.Y. 2015) (certifying limited collective action where affidavits of two employees
"corroborate[d] each others' personal treatment and observations of the treatment of
other employees" and noting that "[w]hile it would be helpful to have the time and dates
of conversations, it is not surprising that plaintiffs would be unable to recall such
specifics").[7]

    Plaintiffs have separately established that they were subject to another illegal
practice—the failure to compensate them for overtime hours they worked.  Section

---

    [6] At a subsequent point in her deposition Guzhvenko stated she could think of
two servers were paid an hourly wage.  (June 19 Guzhvenko Dep. at 100:18-24).  She
went on to confirm that there were employees not being paid an hourly rate, and being
compensated only from tips and service charges.  (*Id.* at 110:5-14).

    [7] By providing evidence from a third employee and Defendants' bookkeeper,
Plaintiffs are unlike the parties in the cases that Defendants raise to argue that
conditional certification is unwarranted.  For instance, *Jenkins v. TJX Companies Inc.*
involved the situation where an employee was claiming that despite being classified as
exempt, he was performing non-exempt tasks.  853 F. Supp. 2d 317, 324 (E.D.N.Y.
2012).  For this he relied only on his deposition testimony.  *Id.*  The record there was far
thinner than it is here, and plaintiff was seeking to certify a nationwide class, involving
hundreds of stores where he did not work.  *Id.* at 324-25.  Similarly, in *Levinson v.
Primedia Inc.*, a plaintiff only relied on his testimony and experience.  No. 02-CIV-2222,
2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003).  The other cases cited by
Defendants, (Resp. at 16), are similarly inapposite.

207(a)(1) of FLSA requires that an employee working "in excess of" 40 hours in a given workweek will be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed' (*i.e.*, time and a half)." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113-4 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).

Both Plaintiffs have attested that they worked more than 40 hours per week and were not paid overtime wages. (Placinta Decl. ¶ 8; Strelchuk Decl. ¶¶ 2, 6). Vyshnevska again corroborates their account. (Vyshnevska Decl. ¶ 4 ("I normally worked 6 days a week. On weekdays I would typically start at 10:00 am and stop working between 1:00 to 2:00 am. On Thursdays, Fridays and Saturdays, I would typically start at 10:00 am and I would finish around 2:00 am, however at times I would leave as late as 3:00 or 4:00 am."); ¶ 11 ("I and my co-workers always worked over forty (40) hours every week, but we did not receive one and one-half (1.5x) times the minimum hourly wage of pay.")). Again, as to the overtime claim, Defendants engage in a merits discussion— arguing they had a policy of not permitting employees to work overtime, *supra* at 11— that cannot, and should not, be resolved at this stage.

The extent that these policies—of not paying wages, and only tips; and of not compensating overtime—were common to other employees determines the scope of the collective to be certified. The factual record proffered by Plaintiffs, while voluminous, is ultimately quite thin on facts, and includes a plethora of conclusory statements that mimic the allegations contained in the Amended Complaint. The burden at this stage of certification is quite low, and while that low burden saves Plaintiffs' motion in some respects, the weak evidentiary showing results in the Court concluding that a far more limited collective should be conditionally certified.

The first question is whether Placinta and Strelchuk are similarly situated to other employees at the respective locations where they primarily worked.

Both Placinta and Strelchuk worked as servers.  Placinta's declaration contains the following paragraph about his co-workers:

> I know that my co-workers were not paid an hourly minimum wage, overtime wage or spread of hours compensation, and that a portion of my co-workers' tips were deducted by management on a daily basis.  I know this because sometimes we would talk about not getting paid correctly.  I remember speaking to Sasha "Dlinyi," Vova, Gera and Oleg about not receiving correct wages.

(Placinta Decl. ¶ 16).  He also stated that servers and bussers "usually performed Non-Tip work" and tasks on "Sanitation Day."  (*Id*. ¶¶ 10-12).  In his deposition he indicated that no servers were paid a salary, (Placinta Dep. at 14:18-22), and detailed that servers (waiters) were compensated only out of tips, (*id*. at 29:23-30:5).  This evidence is sufficient to demonstrate that Placinta and Strelchuk were similarly situated to other servers.

There is also evidence that bussers were subject to the same policy.  Both Placinta and Strelchuk state that bussers did not receive any compensation for such non-tipped work performed on Sanitation Days.  (Placinta Decl. ¶¶ 10-11 ("[S]ervers *and bussers* were required to perform non-tipped work, such as cleaning walls and tables . . . .") (emphasis added); ¶ 12 ("Additionally, servers and bussers were also required to perform Non-Tipped Work for around 2 to 4 hours once a week on 'Sanitation Day' . . . We were not paid any compensation for the hours we worked on Sanitation Day."); Strelchuk Decl. ¶ 11 (same); *see also* Strelchuk Dep. at 34:6-10; Vyshnevska Decl. ¶ 15).  Vyshnevska declares that bussers were not paid any wages.  (Vyshnevska Decl. ¶ 5 ("I

was not paid any wages when I worked at Tatiana Grill Cafe.  I am aware that most of the other servers and bussers that I worked with were not paid any wages as well.")).[8]

Defendants make a series of arguments why this evidence is insufficient.  None have merit.

Defendants contend that Placinta was a uniquely situated employee who had managerial duties and closed the restaurant on certain days of the week.  (Resp. at 23).  According to Defendants, Placinta made a weekly salary of $218.90 plus $300 cash payment for managerial duties.  *Supra* at 10; (Guzhvenko Decl. ¶ 9).  To the extent that Defendants are attempting to use these facts to demonstrate that Placinta was an exempt employee, those facts are insufficient to do so.[9]  Although Placinta closed the restaurant on certain days, he also worked solely as a waiter on other days of the week.

---

[8] Defendants contend that the bussers were not actual employees.  (Kvetnoy Aff. ¶ 14).  Whether a group of persons are actual employees and therefore eligible for FLSA protection goes to the merits of the claims, and therefore are not appropriate for resolution now.

[9] To qualify for the executive exemption under the FLSA, which applies to salaried managers, an employee must be:

> (1) [c]ompensated on a salary basis at a rate of not less than $455 per week[;] (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 560 (2d Cir. 2012) (quoting 29 C.F.R. § 541.100(a)).  Nothing in the record indicates that Placinta's duties involved management of the restaurant, that he directed the work of two or more employees, or had authority regarding hiring or terminating other employees.

He was only paid in tips for those times.  (Placinta Decl. ¶ 4 ("I worked as a server, 5 to 6 days a week from April 2011 to October 2013.  Starting in October 2013, I worked as server 3 to 4 days a week, and assisted in the operation of Tatiana Restaurant on other days, during which time I was responsible for closing the restaurant at the end of the evening.")).  The fact that Placinta closed the restaurant on certain days does not mean that he is not similarly situated to other servers.  *See, e.g.*, *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 161 (S.D.N.Y. 2014) (rejecting argument to deny conditional certification on the basis that customer service representatives "have various secondary job duties, *i.e.*, special projects, and were subject to varying levels of supervision, such that at least some may be covered under FLSA's administrative exemption.").

Defendants also identify a number of differences they allege exist between Plaintiffs and other employees to suggest that no common wage and hour policy existed.  (Resp. at 24-26).  For instance, the record indicates that some employees were paid by cash, others by check, or a combination, (Deposition of Olena Guzhvenko dated April 29, 2017, attached as Ex. C-1 to Mot., Dkt. No. 67 ("April 29 Guzhvenko Dep.") at 149:5-150:24; June 19 Guzhvenko Dep. at 20:23-22:23), that part-time employees were paid differently, (Guzhvenko Decl. ¶ 6) (stating that part-time and full-time employees were paid differently), and that certain employees worked inside the restaurants, while others only served customers outside, (Guzhvenko Decl. ¶¶ 17-18).  There may be myriad differences between employees—shift schedules, duties, or titles—but such differences are only relevant if they bear on Defendants' wage and hour policy.  Otherwise they are distinctions that make no difference for collective certification.  "[T]he fact that the putative class involves a variety of diverse positions . . . and requires an individualized inquiry into each putative class member does not undermine the conditional

certification of the class since under section 216(b) parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." *Summa*, 715 F. Supp. 2d at 390 (quotations omitted).  In this instance, the evidence is sufficient to demonstrate that Plaintiffs were similarly situated to waiters and bussers, and all of them were subject to a common wage and hour policy of not being paid anything but tips and not being paid overtime.  Defendants do not explain how the differences in title, salary, location or owner of restaurant, or payment by check instead of cash undermine the inference that the employees suffered under the common policies.  The identified differences, at best, again go to the merits of each employee's individual recovery or lack thereof—something to be analyzed at subsequent stages of the case.  *Romero v. H.B. Auto. Grp., Inc.*, No. 11-CIV-386, 2012 WL 1514810, at *8 (S.D.N.Y. May 1, 2012) ("This requirement does not mean that plaintiffs must show that each individual plaintiff[']s job duties are perfectly identical; rather, plaintiffs need only show that they are similar. . . .  Such variances are more appropriately analyzed during the second—decertification—stage."); *Cano v. Four M Food Corp.,* No. 08-CV-3005, 2009 WL 5710143, at *9 (E.D.N.Y. 2009) ("Even though plaintiffs are certainly not required to show that they are identically situated, or that they possess the same attributes with respect to their job, they are required to show that they are subject to the same common policy or plan by defendants.").[10]

_____

[10] Defendants cite to the multi-factor test used in *Echevarria v. Las Vegas Beach, Inc.*, No. 10-CIV-20200, 2010 WL 2179747, at *2 (S.D. Fla. June 1, 2010) to argue that Plaintiffs are not similarly situated to members of the proposed collective.  The test used in *Echevarria* has not been adopted, as far this Court is aware, by any court in the Second Circuit.

There is, however, insufficient evidence—or no evidence at all—that Placinta and Strelchuk were similarly situated to captains, food runners, bartenders, and all other employees at the three locations.  At various points in their deposition testimony and declarations, they do make reference to other employees being subject to the same illegal wage practices—namely being paid only tips and not being compensated for overtime.  (*E.g.,* Placinta Decl. ¶ 16 ("I know that my co-workers were not paid an hourly minimum wage, overtime wage or spread of hours compensation, and that a portion of my co-workers' tips were deducted by management on a daily basis.  I know this because sometimes we would talk about not getting paid correctly.  I remember speaking to Sasha 'Dlinyi,' Vova, Gera and Oleg about not receiving correct wages."); Strelchuk Decl. ¶ 15 ("I specifically remember speaking with Vera, Misha 'Nos,' Lena 'Blondinka' and a former manager, Igor Kventoi, about not receiving correct wages."); Vyshnevska Decl. ¶ 18 ("I specifically remember speaking with Artem Strelchuk, Oleg Fomenko, Vlad, Vera, Tatiana Karyakina, Salima Sally, and former managers, 'Zyama' a/k/a Igor Kvetnoi and Misha, about not receiving correct wages.").[11]

However, at no point do Plaintiffs identify where these other individuals worked or whether they worked as servers or in another position.  From these vague statements, it is impossible to draw the conclusion that employees other than bussers or servers were subject to Defendants' wage and hour policies.  *Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 45 (S.D.N.Y. 2018) ("Courts in this Circuit often restrict

---

[11] Defendants also argue that Strelchuk (because he was only employed in 2012) offers no evidence of conversations that occurred within FLSA's statute of limitations. (Resp. at 26-27).  Even if this is true, the conversations are nonetheless "probative of employer's wage and hour practices and they may corroborate the claims of more recent violations."  *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011).

the scope of a proposed collective or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions and hours.") (collecting cases).

The other references in the record to employees other than servers and bussers do not establish that they were subject to an illegal wage policy. Placinta, for example, testified that security personnel, some kitchen staff, and bartenders were also paid out of the earned tips. (Placinta Dep. at 52:25-53:5 (Q: "So you were, in effect, sharing the tips with the security person and the potato peelers, correct?" . . . A: "Yes, bartender also.")). But that testimony does not indicate whether these employees were *only* compensated in tips—and therefore subject to the same policy as servers—or whether the tips were in addition to other compensation. Other statements from Placinta and others offer little more than speculation about the policies affecting non-wait staff, and are probative only of their understanding of wage and hour laws, rather than evidence that these employees were not paid properly by Defendants. (*E.g.,* Placinta Decl. ¶ 18 ("It is *likely* that many of my co-workers who worked as bussers, waiters, captains, and bartenders *did not know* that they should have been paid an hourly minimum wage and overtime after 40 hours while working for at the Tatiana Restaurants and Tatiana Grill Cafe.") (emphasis added); Strelchuk Decl. ¶ 17 ("It is likely that many of my co-workers who worked as waiters, bussers, and bartenders did not know that they should have been paid an hourly minimum wage and overtime while working for Tatiana Grill Cafe or the other Tatiana Restaurants located on the Brighton boardwalk."); Vyshnevska Decl. ¶ 21 ("It is likely that many of my co-workers who worked as waiters, bussers, and bartenders were either afraid to speak up or did not know that they should have been

paid an hourly minimum wage and overtime while working for Tatiana Grill Cafe or the other Tatiana restaurants located on the Brighton boardwalk.")).  That captains and bartenders or others did not know their various rights under the labor laws does not demonstrate that they did not in fact receive minimum or overtime wages or were subject to the same policy (or any unlawful policy) as Plaintiffs.  (And nothing on the record mentions "food runners" at all).[12]

The Court finds it appropriate, therefore, to conditionally certify only servers and bussers for the collective.  *E.g.*, *Feng*, 2016 WL 1070813, at *5 ("[T]o the extent Plaintiff seeks to include non-kitchen workers, such as delivery persons, servers, and busboys, he does not provide any factual support for his belief that these employees . . . were underpaid in the same way that Plaintiff alleges he and the co-workers with whom he spoke were.") (citation omitted); *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 115 (S.D.N.Y. 2015) ("Ms. Bittencourt provides little information about busboys, baristas, counter attendants, hostesses, and chefs beyond identifying them as potential class members.  First, she does not provide information about the type of work performed by these various categories of potential opt-in plaintiffs.  Second, with the exception of the baristas, who make more than the minimum wage, it is unclear what these employees' base salary is or whether they are tipped employees."); *Kim,* 985 F. Supp. 2d at 451) ("Although Kim has shown that he is situated similarly to the other Goat Town kitchen staff members, he has not demonstrated a sufficient factual nexus

---

[12] Indeed, portions of the record suggest that bartenders and other staff were not similarly situated to servers.  (Strelchuk Dep. at 32:21-33:9 (Q: "Do you know how the bartenders were paid?" . . . A: "I know that Tanya was paying salary to them, the same manner as she was paying to cooks or to people doing dishes."  Q: "So the cooks, the bartenders, the dishwashers, they all received a salary, correct?" . . . A: "As far as I know, they had a salary agreed upon.").

between himself and the non-kitchen staff. . . .  Significantly, he does not allege that the Defendants paid these additional employees a fixed weekly salary or that they were denied overtime compensation.").

The next issue is whether the conditional certification notice should be sent to servers and bussers from all three locations—Tatiana Restaurant, Tatiana Grill, and the Beach Cafe.  Placinta worked at Tatiana Restaurant and the Beach Cafe; Strelchuk worked at Tatiana Grill.  Both indicated that they were subject to the unlawful wage and hour policies at each location.  That is sufficient at this stage to warrant notice being sent to all three locations.  *See, e.g.*, *Sun v. Sushi Fussion Express, Inc.*, No. 16-CV-4840, 2018 WL 2078477, at *7 (E.D.N.Y. Jan. 2, 2018) (conditionally certifying collective at multiple restaurants where plaintiffs submitted affidavits demonstrating firsthand experience working at those locations), *report and recommendation adopted*, 2018 WL 1168578 (Mar. 6, 2018).

The parties spend significant time discussing issues that are, at this stage, impertinent to whether notice should be sent to employees of all three locations.  Plaintiffs are not attempting to send notice to locations at which they did not work.  As a result, it is unnecessary to demonstrate that there is common ownership of the three locations or whether the three locations operate as a single entity.  In addition, all of the owners (past and present) of the three locations who might be liable for any wage and hour locations are defendants in the case.  (Tatiana Varzar Decl. ¶¶ 3-5, 23, 28).

Finally, there is the question of the time period of the notice.  Plaintiffs ask that the collective include employees working from August 1, 2013 to the present, which is three years prior to the filing of the Complaint.  (Compl., Dkt. No. 1 (dated August 1, 2016)).  Under FLSA, the statute of limitations is three years for willful violations and

two years for non-willful violations.  29 U.S.C. § 255(a).  Defendants contend that
Strelchuk—according to their records—only worked in the summer of 2012, and any
FLSA claim is time-barred.  (Resp. at 26).  Strelchuk, for his part, states that he worked
in 2013.  (Strelchuk Decl. ¶ 1; Strelchuk Dep. at 26:23-27:19).  The Court need not and
cannot determine the merits of Strelchuk's claims at this point.  *Supra* at 15.  And the
Court can rely on his declaration to conclude that he has a claim beginning in the
summer of 2013, which falls within the three-year statute of limitations for willful FLSA
violations.

Defendants counter that even if the Court accepts that Strelchuk worked in 2013,
a two-year statute of limitations should apply, since Plaintiffs have not demonstrated
that Defendants' FLSA violations were willful.  (Resp. at 6).  "[A]t the conditional
certification stage, a plaintiff need not provide evidence sufficient to establish
willfulness in order for the three-year period to be utilized for notification purposes."
*Slamna v. API Rest. Corp.*, No. 12-CIV-757, 2013 WL 3340290, at *4 (S.D.N.Y. July 2,
2013).  "[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts
frequently permit notice to be keyed to the three-year period prior to the filing of the
complaint, 'with the understanding that challenges to the timeliness of individual
plaintiff's actions will be entertained at a later date.'"  *Hamadou v. Hess Corp.*, 915 F.
Supp. 2d 651, 668 (S.D.N.Y. 2013) (quoting *Winfield,*  843 F. Supp. 2d at 410 )); *e.g.*,
*Raimundi v. Astellas U.S. LLC*, No. 10-CIV-5240, 2011 WL 5117030, at *2 (S.D.N.Y. Oct.
27, 2011) ("If appropriate, this Court can revisit any statute of limitations questions at a
later stage.").  As a result, at this stage, it is appropriate to permit conditional
certification of a class beginning on August 1, 2013—which is within a three-year FLSA

limitations period—and during a subsequent stage of the case, should Plaintiffs fail to demonstrate that Defendants acted willfully, employee claims' can be limited.

In light of the foregoing, the Court approves the conditional certification of a collective action as follows:

> All current and former servers and bussers employed at Tatiana Restaurant, Beach Cafe, and Tatiana Grill from August 1, 2013 through the present.

B.     Objections to Distribution of Notice

Defendants raise a number of objections to how Plaintiffs propose to obtain contact information for potential plaintiffs and the method of distributing the notice.

*First*, Defendants argue that they should not be required to provide telephone numbers or e-mail addresses of potential opt-in plaintiffs.  The request to limit the information provided is denied.  "In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, *telephone numbers, email addresses*, and dates of employment of potential collective members." *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74-75 (E.D.N.Y. 2016) (emphasis added) (quotations omitted) (collecting cases).  Defendants are ordered to turn over the information requested including telephone numbers and e-mail addresses.

*Second*, Defendants argue that newspaper notice is not warranted, and claim that distribution of notice via regular mail is standard practice for collective actions.  Not so.  Courts in this Circuit routinely permit both notice via mail and publication in a local newspaper.  *See, e.g.*, *Rivera v. Harvest Bakery Inc.*, No. CV 13-00691, 2014 WL 3611831, at *5 (E.D.N.Y. July 7, 2014) (permitting publication of notice in local periodicals); *Khalil v. Original Homestead Rest., Inc.*, No. 07-CIV-695, 2007 WL 7142139, at *2 (S.D.N.Y. Aug. 9, 2007) ("Plaintiffs are permitted to mail said notice to

the individuals required to be disclosed by defendants and to publish said notice in such local newspapers as determined by plaintiffs."); *Gortat*, 2010 WL 1423018, at \*12 (finding publication of notice in local newspaper appropriate).  In this case, Defendants through their bookkeeper, admit that their employment records are incomplete, and no records exist for bussers and other seasonal or part-time employees.  (Guzhvenko Decl. ¶ 43 ("Full corporate records for the prior owner of Tatiana Grill, as well as the prior owner of Tatiana Restaurant are admittedly not available."); April 29 Guzhvenko Dep. at 170:12-20 (Q: "Okay.  But when an employee stops working there, are their files—their W-4 forms stored anywhere else?"  A: "No."  Q: "They're just trashed?"  A: "Basically, yes."  Q: "Okay.  Are there any other employee records that are kept on file, besides a W-4 form?"  A: "Not that I'm aware of."); June 19 Guzhvenko Dep. at 78:9-15 (Q: "So these could be any of the managers, and if they need someone, they have a list of these random workers?"  A: "I don't know if they have a list."  Q: "Okay.  Well, do you have a list of the random workers?"  A: "I don't.")).  As a result, publication notice is warranted.

Plaintiffs have not provided a copy of the proposed newspaper notice and the name of the publication where they intend to provide notice.  They are directed to provide promptly the proposed newspaper notice (with a certified translation) and the name(s) of the publications where they intend to use such notice.  They should also provide a copy of the proposed notice that is that is consistent with this order for Court approval.

<u>Conclusion</u>

For the reasons stated above, the motion for conditional certification of a collective action is granted in part.  Plaintiffs may send notice to all current and former

servers and bussers at Tatiana Restaurant, Beach Cafe, and Tatiana Grill for the three years prior to the filing of the Complaint.

Defendants are directed to provide the requested contact information by October 5, 2018.  The parties are directed to meet and confer, and submit a revised publication order including the name of the local Russian-language newspaper(s) the notice will be published in by October 5, 2018 for the Court's approval.  The proposed notice to be sent to the potential opt-in parties should also be submitted by that date.

SO ORDERED.

*/s/ Sanket J. Bulsara September 21, 2018*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York